Barbara ERVIN

v.

Billy ERVIN.

No. 81–382–Appeal.

Supreme Court of Rhode Island.

April 14, 1983.

Barbara T. Ervin, pro se.

Abedon, Michaelson, Stanzler, Biener, Skolnik & Lipsey, Milton Stanzler, Leroy V. Marcotte, Providence, for defendant.

## OPINION

BEVILACQUA, Chief Justice.

The defendant-petitioner, Billy Ervin, appealed from a judgment of the Family Court directing him to contribute toward his son's education.

The defendant filed a notice of appeal from the judgment apparently unaware that in order to seek judicial review of Family Court judgments, G.L.1956 (1981 Reenactment) § 14–1–52 requires that a petition for certiorari be filed within the twenty days.

However, because the appeal was filed within the twenty days and the change in appellate procedure was in close proximity with the adjudication of the issue, we will exercise our revisory and appellate jurisdiction. We, therefore, will consider defendant-petitioner's notice of appeal as the equivalent of a petition of a writ of certiorari issued by this court and will review the Family Court's judgment.

The record indicates that shortly before his son's eighteenth birthday, defendant-petitioner (Billy) filed a motion to terminate his child-support payments. His ex-wife, Barbara Ervin, responded with a motion to continue child support or in the alternative to increase her alimony to help pay for Michael's college education.

The trial justice heard the motions on January 6, 1982. Both parties testified as to their respective incomes and expenses. Billy testified that he was a captain in the United States Navy and currently the head of research and development of surface warfare. He introduced a statement of needs and expenses which showed his yearly salary of $43,874.16, with a weekly net of $646.66 and weekly expenses of $678.43. On cross-examination, Billy stated that these figures did not include dividends and capital gains realized on a stock portfolio of $30,000 and other small amounts of income. His expense figure also included his child-support and alimony payments.

Barbara testified that her present pay was $175 per week. She stated that she had no savings and no expectation of an increase in salary. Rather, she had "an expectation of being unemployed." She estimated her weekly needs at $301.53. She further testified that Michael started Engineering School at the University of Rhode Island and that he earned approximately $1,280 during the summer to help defray his college expenses.

Barbara then introduced a letter from her ex-husband written in July of 1970, which provides in pertinent part:

"Concerning saving for Michael's college education—as his father, of course I'll see that he gets to college. How I handle my finances to achieve this is strictly my affair. An inflexible arrangement such as you suggest is unacceptable. As previously described to you I have more than adequately provided for Michael's future in the event of my death. So you have nothing to be concerned about as to Michael's being able to attend college, even if I have to borrow the money."

After considering all of the evidence, the court stated that "it would only be fair if at this time the respondent, Captain Ervin, would be required within his ability to contribute towards the education of his son." The court then ruled that "[t]he order for a hundred dollars a month is reduced to sixty-five dollars a month" to continue until and including June of 1984.

On March 23, 1981, Barbara filed a complaint stating that no payments had been received under the decree and praying for an order of wage assignment plus back payments of $455. On April 8, Billy answered that the complaint failed to state a cause of action. He also filed a motion to reargue based upon this court's decision in *Siravo v. Siravo,* R.I., 424 A.2d 1047 (1981).

The court heard the above matters on April 23, 1981. The parties agreed to rely on the transcript of the previous hearing. Billy's counsel, relying on *Siravo,* argued that a divorced parent had no obligation to continue support for an emancipated child who chose to attend college. Barbara's counsel contended that the *Siravo* decision was limited to its facts where the property-settlement agreement expressly stipulated that support would cease when the child became emancipated.

On May 26, 1981, the trial justice rendered a decision which affirmed his prior judgment. He stated that the *Siravo* case was not controlling. Rather, the doctrine of promissory estoppel was applicable in light of Barbara's reliance on the letter of July 10, 1970, which indicated that Billy would provide for his son's future college education.

The initial issue presented to this court is whether a divorced parent of adequate means can be required to continue providing support for a college student after the student reaches the age of majority.

■ Generally, "a father's responsibility for the support of his children terminates once they reach the age of majority absent some exceptional circumstances or express agreement between the parties to the contrary." *Calcagno v. Calcagno,* 120 R.I. 723, 728–29, 391 A.2d 79, 82 (1978) (citing *Bouchard v. Bouchard,* 119 R.I. 656, 662, 382 A.2d 810, 813 (1978)).

This court clarified the above proposition in *Siravo v. Siravo,* R.I., 424 A.2d 1047 (1981), and held that the only exception to the automatic-emancipation rule occurs when a mental or physical infirmity renders a child unable to take care of himself. *Id.* 424 A.2d at 1050. This general proposition was reiterated in *In re Debra,* R.I., 445 A.2d 577 (1982). The court cited the *Calcagno* and *Siravo* cases and held that "[b]ecause no exceptional circumstances exist which would require a natural parent to provide post-secondary education for Debra, the Family Court has no authority to require the respondent to do so as parens patriae." *Id.,* 445 A.2d at 578.

In the instant case, there is no allegation of mental or physical handicap. Nor does the record show the existence of a binding agreement concerning Michael's college education. The trial justice reviewed the couple's settlement agreement which provided for child-support payments of $100 per month for food and clothing. Clearly, the agreement did not address postsecondary education.

We will consider, therefore, whether the trial justice was correct in finding that defendant-petitioner had made a promise and that plaintiff's action was induced by said promise. The requirements of promissory estoppel are set out in *East Providence Credit Union v. Geremia,* 103 R.I. 597, 239 A.2d 725 (1968):

"A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided by enforcement of its promise." *Id.* at 601, 239 A.2d at 727 (quoting 1 Restatement *Contracts* § 90 at 110 (1932)).

■ On review by way of certiorari, this court does not weigh the evidence but merely examines the record to determine if there is any competent evidence to support the tribunal's findings. *Town of Narragansett v. International Association of Firefighters, AFL–CIO, Local 1589,* 119 R.I. 506, 508, 380 A.2d 521, 522 (1977).

■ In searching the record we do not find competent evidence to support the trial justice's finding. The only evidence in the

record that resembles a promise by the defendant-petitioner to provide for the child's future college education was the 1970 letter written by the defendant-petitioner. The letter, however, merely responds to an inquiry at the time by the plaintiff as to the secondary education of the child of the parties. Even if we were to consider the contents of the letter as a promise made by the defendant-petitioner to provide for the son's college education, the evidence in the record is completely insufficient to support any allegation that the plaintiff detrimentally relied on the promise. There was no testimony to indicate that the plaintiff enrolled her son because of the defendant-petitioner's letter. Therefore, the plaintiff did not show that she suffered an injustice because of any good faith reliance on the defendant-petitioner's alleged promise. Although her income and expenses showed that she was unable to provide for the cost of the son's education, this alone was insufficient to meet her burden.

The defendant-petitioner's petition for a writ of certiorari is granted, and the case is remanded to the Family Court for further proceedings consistent with this opinion.