DECISION
Before this Court is an appeal from a decision of the East Greenwich Zoning Board of Review (Board). 1875 Division Road, LLC (Appellant) seeks reversal of a December 18, 2007 decision to uphold two "Zoning Violation Notices" (the Notice). Jurisdiction is pursuant to G.L. 1956 § 45-24-69.
 I Facts Travel
Appellant is the owner of two adjacent lots. Lot 81 on Assessor's Plat 12-C, which is approximately 6,400 square feet, is located in East Greenwich, Rhode Island and is zoned F-1, farmland and low-density residential (the East Greenwich lot). East Greenwich, R.I. Code art. III, § 260-7(f). Lot 5 on Assessor's Plat 12 is an 8-acre parcel located in West Warwick, Rhode Island and is zoned commercial/industrial (the West Warwick lot). Both lots lack frontage along any public road. Appellant's only means of access for both lots is a right-of-way, via Division Road, through a state-owned parcel, Lot 98 on Assessor's Plat 12 in East Greenwich.
The right-of-way was created in 1956 and recorded in Book 35 at Page 153 of the East Greenwich Land Evidence Records. The grant provides for a 15' right-of-way for passage by *Page 2 
foot and vehicles. In 2000, the State of Rhode Island doubled the size of the right-of-way through an easement, recorded in Book 326 at Page 66. The easement permits the "installation . . . and operation of a roadway . . . for the purpose of ingress and egress from property of grantee designated as Town of West Warwick, Tax Assessor's Plat 12, Lots 3, 4, 5 [Appellant's lot]."
The right-of-way affords Appellant access to both the East Greenwich and West Warwick lots, but may not provide a direct route to the West Warwick lot. It is alleged that Appellant must cross over approximately 250 feet of the East Greenwich lot to reach the West Warwick lot. This dispute concerns Appellant's alleged use of this portion of the East Greenwich lot in furtherance of the commercial enterprise taking place on the West Warwick lot and in violation of the East Greenwich lot's zoning.
On February 23, 2007, Appellant received a "Zoning Violation Notice" from Zoning Officer Wayne R. Pimental (Pimental). The notice informed Appellant that site inspections of the East Greenwich lot revealed two (2) violations of the East Greenwich Zoning Ordinances: (1) Appellant violated Art. III, § 2.8, which prohibits development that increases storm water runoff quantity or decreases runoff quality. Specifically, Pimental found that Appellant filled and graded the right-of-way in such a way as to cause silt and additional material to run off onto Division Road. Appellant was given thirty (30) days to submit a runoff-abatement plan to the Department of Public Works. (2) Appellant violated Art. III, § 3 Table #3.1, which classifies Appellant's East Greenwich lot as F-1, farmland/low-density residential. Pimental found that Appellant used the East Greenwich lot for commercial purposes but did not state the specific facts upon which he based this finding. Pimental recommended that Appellant seek either a zoning change or a use variance and ordered Appellant to cease the commercial activity.
Appellant filed an appeal of the Notice with the Zoning Board of Review. A hearing was *Page 3 
held on August 28, 2007. Chairperson Joseph Russolino commenced the hearing by quoting the East Greenwich Zoning Ordinance that prescribes the Board's standard of review:
 "All hearings on appeal to the Board that require the decision or determination made by an administrative officer, agency or the Historical District Commission shall be heard on the record and shall be subject to the notice and application procedures articulated elsewhere in this article. Appeals shall not be heard de novo. The Board shall not receive new information nor hear new testimony by the applicant or the appealed officer or agency. The Board may review the officer's or agency's file on the application and may review the minutes or notes of any official meeting(s) regarding the application. Board members may question the parties involved where clarification of any information is needed. Where new testimony is inadvertently received by the Board, which they feel sheds new light on the application, the Board shall remand the application to the appropriate officer, agency or commission. The Board shall take no further action until the officer, agency or commission has had an opportunity to review the new information and make a further determination." (R. 3-4) (citing East Greenwich, R.I. Code § 260-90 (emphasis added)).
Pursuant to Code § 260-90, the Board prohibited Appellant from testifying at the hearing. The Board consistently refused to hear from Appellant, although it questioned Appellant's attorney concerning Appellant's use of the East Greenwich and West Warwick lots.
When asked about the commercial-use violation, Appellant's attorney offered the testimony of Appellant in regards to the Board's numerous factual questions. When asked whether Appellant stopped traffic on Division Road while driving commercial vehicles across the East Greenwich lot, Appellant's attorney stated that he did not know since he had never seen Appellant drive commercial vehicles there. (R. 15.) Renu Englehart, a Board Member, replied, "I live on that road, and, in fact, what he does — those trucks actually stop traffic in both directions." (R. 15-16.) When asked again about stopping traffic, Appellant's attorney maintained that he did not know and suggested that the Board ask Appellant directly. Board member Robert Bolton then stated that Appellant's answer was not necessary because Bolton *Page 4 
stated, "I can answer that question, because I have actually seen it happen myself. . . . it's a hazard that is created by these trucks . . . these large trucks, they try to make the turn . . . they back up and they keep trying to make it." (R. 16-17.)
A third factual question was asked of Appellant's attorney: The Board inquired into what times of day Appellant drives commercial vehicles over the right-of-way. (R. 17.) Appellant's attorney stated "I'd be happy to have [Appellant] answer the question, if you want." (R. 17.) Chairperson Russolino replied, "Okay. If you have someone here who could answer the question if I could speak to him for a moment." The Town Solicitor interrupted Russolino to remind him that no testimony was permitted, and that question went unanswered. (R. 17-18.)
The Board then asked Appellant's attorney the operative question: whether Appellant drove commercial vehicles over any portion of the East Greenwich lot after the state right-of-way ended. (R. 22.) Appellant's attorney stated that he did not believe so. (R. 23.) When pressed as to whether he was "testifying that at no time [the trucks] drive across a piece of East Greenwich property," Appellant's attorney stated "I'm not testifying." (R. 23). Appellant's attorney later stated that "I don't dispute there's a 250-square foot portion between the town boundaries and the end of the right-of-way with the state that crosses my client's property that's used as an access point to the property." (R. 24.)
When asked about the runoff violation, Appellant's attorney maintained that his client had not filled or graded the right-of-way and stated that the file contained no evidence of any increase in runoff by way of an engineering study or drainage calculation (R. 25-26.) The Solicitor then suggested that Pimental be called to testify. Pimental introduced himself and proceeded to testify to his rationale behind issuing the Notice if Violation regarding the runoff issue. *Page 5 
Pimental admitted that his file lacks a "before" picture of the right-of-way. (R. 27, 29.) He maintained, however, that "we do know . . . there were modifications." (R. 27.) Pimental testified that he had objected to the request for an Alteration Permit to enlarge the right-of-way, but the Department of Transportation issued the permit anyway. (R. 27.) The Alteration Permit was apparently directed at clear-cutting along the right-of-way, not the alleged grading and/or filling. Like that of the commercial-use violation, the discussion of the runoff violation included the personal observations of Board members. Board member Bolton stated that "basically, one car could barely fit through . . . it looked nothing like this [Pimental's purported `after' picture] at all." The Board then asked Appellant's attorney if the right-of-way was in fact modified. Appellant's attorney again noted the desirability of having Appellant answer the question of what occurred on Appellant's own land, but also maintained that Appellant had done no grading or filling as alleged by Pimental save for the authorized clear-cutting. (R. 30-31.)
The Board concluded the argument portion of the hearing and began its discussion. Appellant had not requested a variance, but alternate Board member Robert Durant commented at length on Appellant's failure to satisfy the statutory requirements for a variance. (R. 32-35.) Durant also detailed his own experience waiting for Appellant's commercial vehicles to enter and exit the right-of-way. (R. 34.) The Board unanimously agreed to deny the appeal. (R. 36.)
Appellant argues that the Board hearing violated its Due Process rights because Appellant was not allowed to present evidence, but three (3) members of the Board testified to what they saw happening on Appellant's property and the adjacent street. Appellant also argues that each of the Board's findings, regardless of the constitutional defect in procedure, must be overturned because: (1) the art. III, § 2.8 finding was clearly erroneous given the lack of evidence to support the allegation of grading/filling; and (2) the art. III, § 3 Table #3.1 finding was predicated upon *Page 6 
an error of law because the zoning classification does not apply to the state-owned right-of-way.
 II Standard of Review
Rhode Island General Laws 1956 § 45-24-69 authorizes this Court to review zoning board decisions. Section 45-24-69(d) provides in relevant part:
 "The court shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact. The court may affirm the decision of the zoning board of review or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions, or decisions which are:
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the authority granted to the zoning board of review by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error o[f] law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
This Court, sitting as an appellate court with a limited scope of review, shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. Ctr. forBehav'l Health v. Barros,710 A.2d 680, 684 (R.I. 1998) (citation omitted). The trial justice must examine the certified record to "determine whether the agency's decision is supported by substantial evidence." Id.
"`Substantial evidence . . . means such relevant evidence that a reasonable mind might accept as adequate . . . and means an amount more than a scintilla, but less than a preponderance.'"Lischio v. Zoning Bd. of Review of North Kingstown,818 A.2d 685, 690 n. 5 (R.I. 2003) (quoting Caswell v. GeorgeSherman Sand Gravel Co., 424 A.2d 646, 647 (R.I. 1981)). Thus, "if the decision below was based on sufficient legally *Page 7 
competent evidence in the record, the reviewing court is obliged to affirm the agency's decision." Johnston Ambulatory SurgicalAssocs., Ltd. v. Nolan, 755 A.2d 799, 805 (R.I. 2000).
The Court is not bound, however, by an administrative agency's determinations as to questions of law; the Court will review these questions de novo. Arnold v. R.I. Dep't ofLabor Training Bd. of Review, 822 A.2d 164, 167 (R.I. 2003). Thus, considerations of agency jurisdiction and statutory interpretation are questions of law for which the Court is ultimately responsible. City of East Providence v. Pub. Util.Comm'n, 566 A.2d 1305, 1307 (R.I. 1989).
 III Analysis
Officer Pimental issued the Notice of Violation after conducting site inspections, but without interviewing Appellant. At the appeal before the Board, the Board considered new information in the form of testimony from Pimental and new information from Board members, but did not permit Appellant to testify on his own behalf. Appellant's attorney, however, was permitted to make legal arguments.
Appellant argues that this denial of the opportunity to present evidence — an opportunity afforded its opponent the zoning official (Pimental) and multiple Board members whose new information aligned with the zoning official — amounted to a denial of Appellant's due process rights. Appellant also contends that the Town lacks statutory authority to limit the scope and extent of a board of review hearing. Appellant argues that Ordinance § 260-90, which broadly circumscribed Appellant's participation in the hearing, violates statutory provisions because it is "[i]n excess of the authority granted to the zoning board of review by statute." Section 45-24-69(d)(1-2). The Board contends that Appellant failed to preserve the argument on the invalidity of the Ordinance because it was not raised at the hearing. The Board also maintains that § 45-24-58 *Page 8 
authorized the Town to regulate the appeals process to the extent of Ordinance § 260-90.
The Board correctly asserts that although Appellant urged the Board to disregard the Ordinance by offering to testify numerous times (Tr. 16, 17, 18, 31), Appellant failed to specifically argue that Ordinance § 260-90 was invalid at the hearing. The Board contends that Appellant thus waived that issue on appeal to this Court. The failure to present an argument at trial constitutes a waiver of that argument on appeal.M.B.T. Constr. Corp. v. Edwards,528 A.2d 336, 338 (R.I. 1987). However, the general rule does not apply in this context because boards of review lack the authority to consider the validity and enforceability of zoning ordinances.Id. Thus, "questions with respect to the validity of a zoning ordinance lie in the first instance with the courts."Ferland v. Cellemme, 1997 WL 1051025 (R.I. Super. 1997) (citing M.B.T. Const., 528 A.2d 336). Appellant did not err by failing to challenge the validity of Ordinance § 260.90.
This Court, therefore, will address the application of Ordinance § 260-90, which prohibits the presentation of new testimony or information at a Zoning Board of Review hearing, to the proceedings below. The Court looks to Chapter 24 of Title 45 for the legislative grant of authority to limit the scope of appeals hearings. The Board maintains that § 45-24-58 provides such authority. Section 45-24-58 states:
 "The zoning ordinance establishes the various application procedures necessary for the filing of appeals, requests for variances, special-use permits, development plan reviews, site plan reviews, and other applications that may be specified in the zoning ordinance, with the zoning board of review, consistent with the provisions of this chapter. The zoning ordinance provides for the creation of appropriate forms, and for the submission and resubmission requirements, for each type of application required. A zoning ordinance may establish that a time period of a certain number of months is required to pass before a successive similar application may be filed." *Page 9 
"In construing a statute, the court is to establish and effectuate the intent of the Legislature." Rhode Island State LaborRelations Bd. v. Valley Falls Fire Dist.,505 A.2d 1170, 1171 (R.I. 1986) (citing Howard Union ofTeachers v. State, 578 A.2d 563 (R.I. 1984)). Legislative intent is determined from an examination of the "language, nature and object of the statute." D'Ambra v. North Providence Sch.Comm., 601 A.2d 1370, 1374 (R.I. 1992). Where the statutory language is clear and unambiguous, the enactment must be applied literally and is not subject to judicial construction; "the words must be given their plain and ordinary meaning." Link v.State, 633 A.2d 134, 1348 (R.I. 1993).
Furthermore, this Court will adhere to "the well-settled principle that a legislative grant of municipal power to exercise a portion of the state's sovereignty should be strictly construed."Bertrand v. Di Carlo,111 R.I. 509, 512, 304 A.2d 658, 660 (R.I. 1973).
Section 45-24-58 does not address the limits, if any, ordinances may have on the scope and extent of hearings. Section 45-24-58 permits town ordinances to "establishe[] the various application procedures necessary for the filing of appeals" and "provide[] for the creation of appropriate forms, and for the submission and resubmission requirements." This statute delegates the power to regulate the manner in which the appeals process is initiated. See Bruce Brayman Builders, Inc. v. Town ofHopkinton Zoning Bd. of Review, No W.C.-2000-0036, 2004 WL 254583 at *3 n. 4 (R.I. Super. Feb. 4, 2004) (noting § 45-24-58 provides for the procedures and requirements for filing an application). Section 45-25-58 does not delegate the authority to regulate the manner in which an appeal, once initiated pursuant to local ordinance, is ultimately adjudicated. Ordinance § 260.90, which regulates the manner in which an appeals hearing is conducted, is thus ultra vires and invalid pursuant to section 45-24-69(d)(2).
Our Supreme Court supports the conclusion that § 45-25-58 does not permit regulation of *Page 10 
the appellate hearing. In Bertrand v. DiCarlo, our Supreme Court held that a local legislature acted ultra vires in enacting an ordinance regulating the storage of kerosene. 111 R.I. at 512-13, 304 A.2d at 660-61. Our Supreme Court reasoned that the ordinance was invalid because the enabling act delegated authority to regulate only the sale of kerosene.Id. at 512-13, 304 A.2d at 660-61. Here, § 45-24-58, entitled "Administration — Application procedure," authorizes municipalities to regulate only the manner in which an appeal is initiated. Section 45-24-58 is silent on the issue of regulating the procedure of the appellate hearing. This section, thus, does not delegate the authority to regulate beyond the application procedure for initiation of an appeal.
Besides invalidating ordinances enacted where the enabling act is silent, our Supreme Court has also invalidated municipal zoning ordinances that "restrict[] the rights conveyed in the enabling legislation." M.B.T. Const.,528 A.2d 336 at 339; A.T. G., Inc. v. Zoning Bd. of Reviewof N. Smithfield, 113 R.I. 458, 322 A.2d 294 (1974). The enabling legislation here, § 45-24-57 mandates that zoning boards of review "hear and decide appeals." The Board maintains that it held a proceeding that comported with the requirement of an appellate hearing despite Ordinance § 260-90's prohibition on Appellant's presentation of new evidence. Appellant contends that the prohibition on the presentation of new evidence, though valid in other contexts, amounted to a denial of Appellant's due process rights here because Appellant was never afforded a meaningful opportunity to be heard.
In A.T. G., Inc., the issue was whether the municipality's rule — that discontinuance of an existing nonconforming use occurred automatically at the passage of one year's time — comported with the delegation permitting municipalities to deny permits to rebuild upon finding a discontinuance. 113 R.I. 458, 322 A.2d 294. Our Supreme Court stated that although the passage of time is relevant, "`the decisive test is whether the circumstances surrounding such *Page 11 
cessation of use are indicative of an intention to abandon the use.'" Id. at 464, 332 A.3d at 297 (quoting 2 Rathkopf, The Law of Zoning Planning, ch. 61-3 (3d ed. 1972)) (emphasis added). In limiting the discontinuance inquiry to the passage of time alone, the "local legislature . . . act[ed] ultra vires of its authority in that it [] abridge[d] in the ordinance a right granted by the enabling act." 113 R.I. at 463, 332 A.2d at 296 (citingHardy v. Zoning Bd. of Review,113 R.I. 375, 321 A.2d 289 (1974); Hartunian v. Matteson,109 R.I. 509, 288 A.2d 485 (1972)).
The issue here is whether the proceeding below — in which Appellant was denied the opportunity to present evidence following the issuance of Notice of Violation based upon site inspections — comports with the delegation permitting municipalities to conduct hearings and to regulate the hearing application procedure. The inquiry concerns what constitutes a "hearing" under Rhode Island law. The Board does not dispute that Appellant's rights regarding the use of its property invokes procedural due process protections. Therefore, this Court will examine whether the "hearing" provided by the Board satisfied the minimal requirements of due process under the circumstances.
"Due process in the administrative context requires the opportunity to be heard `at a meaningful time and in a meaningful manner.'" Desrosiers v. Rhode Island Pub. Util. Comm'n Div. ofMotor Carriers, 2001 WL 1685595 (R.I. Super.) (quotingLarue v. Registrar of Motor Vehicles,568 A.2d 755, 758 (R.I. 1990)). "In disposing of property interests, due process requires that each affected individual has had a fundamentally fair chance to present his or her side of the story and to rebut opposing submissions." 16B Am. Jur. 2d Constitutional Law § 1002 (citing Rein v. SocialistPeople's Libyan Arab Jamahiriya, 568 F.3d 345 (2d Cir. 2009)).
The Board correctly asserts that strict compliance with the rules of procedure applicable in judicial trials is not required of administrative adjudications. (Appellee's Mem. 6.) *Page 12 
"Minimum procedural due process does not demand strict conformance to the rules of evidence at a state administrative hearing."Sterling Shoe Co. v. Norberg,411 F.Supp. 128, 132 (D.R.I. 1976). "There is no inexorable due process requirement that oral testimony must be heard in every administrative proceeding in which it is tendered." 16B Am. Jur 2d Constitutional Law § 1005 (citing Biliski v. RedClay Consol. Sch. Dist. Bd. of Educ.,574 F.3d 214 (3d Cir. 2009)). Thus, Ordinance § 260.90's prohibition of Appellant's testimony at the appeals hearing was not necessarily inadequate. The prohibition on testimony, however, in a factual dispute where testimony constitutes almost the entire case troubles the Court. Further, Ordinance § 260.90 prohibits more than testimony — it prohibits the presentation of all "new information." The prohibition on "new information" in this context operated to preclude Appellant from ever presenting evidence on its own behalf: the Notice of Violation was based only upon Pimental's observations, and the only facts thus presented at the Board hearing were Pimental's testimony, Pimental's photograph showing the current condition of the right-of-way, and the Board members' testimony.
The transcript of the hearing demonstrates that the Board did not believe its inquiry was limited by Ordinance § 260-90. The Board treated § 260-90 as a limitation on the answers the Board could receive from Appellant, but not a limit on the questions it could ask. The Board asked for evidence on all the disputed facts. Towards the runoff violation, the Board asked whether Appellant had in fact added gravel to the right-of-way. Towards the commercial-use violation, the Board asked whether Appellant did in fact drive commercial vehicles over any portion of the East Greenwich lot. Appellant's attorney lacked the personal knowledge required to provide a reliable answer, but his offers of Appellant's relevant testimony were rebuffed.
The Board is correct that strict compliance with procedural rules is not required. The *Page 13 
Board does not explain, however, how an absolute bar to the presentation of any new information by Appellant, at all stages of the proceedings, nonetheless satisfied § 45-24-57's requirement of an appellate hearing. Section 45-24-57 mandates that boards "hear and decide appeals," but the proceeding that occurred below did not constitute a "hearing." Ordinance § 260-90, to the extent that it prohibited Appellant from ever presenting evidence on its own behalf, is thus invalid pursuant to section 45-24-69(d)(1).
The Court is cognizant of administrative agencies' and municipalities' frequent use of a two-tiered standard of review.See, i.e., Envt'l Sci. Corp. v. Durfee,621 A.2d 200 (R.I. 1993); Bliss v. Wal-Mart Real Estate Bus.Trust, No. 08-1132, slip. op. (R.I., filed July 10, 2009);Cavanaugh v. Contractors' Registration Bd., No. 2008-2657, slip. op. (R.I., filed Dec. 8, 2008). A municipal board, sitting as an appellate body, may properly defer to a hearing officer's factual determinations. Cavanaugh, No. 2008-2657, slip. op. (upholding board's decision based on photographic evidence, "live and former testimony," and board members' expertise). In Cavanaugh, our Superior Court upheld a board's adherence to a regulation prohibiting the consideration of new evidence at an appellate hearing before the board.Id. at 12-14. The Cavanaugh appellant, however, "had the opportunity to `challenge and offer evidence to disprove the Commissioners [sic] investigative report, if any,at an Administrative hearing.'"Id. at 12 (emphasis in original). Here, Appellant had no such opportunity. Pimental's Notice was issued based upon Pimental's site inspections, not a hearing before a hearing officer.
Besides Ordinance § 260-90's effect on Appellant's statutory right to a hearing, the Court is troubled by the Ordinance's effect on the Board's fact-finding function. Ordinance § 260-90 forced the Board to make its decision after hearing evidence from only one side of the dispute. *Page 14 
Such an incomplete presentation cannot produce accurate and reliable fact finding.
 Conclusion
After a review of the entire record, the Court finds that the Board acted in excess of the authority granted to it by Chapter 24 of Title 45 of the Rhode Island General Laws when the Board adhered to Ordinance § 260-90. Section 45-24-69(d)(2). The Court finds that the Board proceedings were also conducted in violation of statutory authority. Section 45-24-69(d)(1). Accordingly, substantial rights of the Appellant have been prejudiced.
Pursuant to § 45-24-69, this Court may remand the case for further proceedings, or may reverse or modify the decision. This Court will not reverse or modify the decision because the unbalanced record prevents accurate and reliable factfinding. The August 27, 2008 Zoning Board of Review decision is thus vacated, and this case is remanded to the Zoning Board for a de novo
hearing.
Counsel for Appellant shall submit an order consistent with this decision.